# THE STATE v. HUFF, Appellant.

### Division Two, November 12, 1901.

1. **Appeals:** WEIGHT OF EVIDENCE. The appellate court will not undertake to pass upon the weight of evidence in a criminal case. Unless there was no substantial evidence to justify the verdict, or it was the result of passion, prejudice or partiality on the part of the jurors, it will not interfere.

2. **Attempt to Ravish Feeble-Minded Female:** RESISTANCE. Where the prosecutrix testified that she did not object to the caressings of defendant and other privileges taken with her person in advance of his attempt to have sexual intercourse with her, and that she knew it was wrong to permit him to do so, yet if the evidence shows she declined to submit further to his solicitations and gave him back money which he had given her, and cried and begged repeatedly to be, let out of the buggy when he got down in front of her and put his hands under her clothes and undertook to have connection with her, it will be held that, under these circumstances, it was a question for the jury to determine whether he intended to accomplish his purpose regardless of any resistance she might offer, and hence the verdict can not be set aside as the result of prejudice, passion or partiality.

3. ————: INSTRUCTION. Under such circumstances, her evidence showing that she did not consent, and that she knew it was wrong to permit his advances, it was not error to refuse an instruction to the effect that the jury would not consider the prosecutrix's unsoundness of mind, if she was too weak-minded to give consent to carnal intercourse unless defendant had notice of such mental defects. Her mental infirmity was not an issue in the case, the only issue being, did she directly or impliedly consent?

Appeal from Monroe Circuit Court.—*Hon. D. H. Eby,* Judge.

AFFIRMED.

State v. Huff.

*Bodine & Boyd* for appellant.

(1)   The instruction in the nature of a demurrer, offered by defendant at close of plaintiff's case, should have been given, there being no evidence of force used or attempted to be used by defendant.   In order to convict for an assault with intent to rape, the evidence must show beyond a reasonable doubt, that defendant intended to accomplish his purpose regardless of any resistance the woman might offer.   State v. Hayden, 141 Mo. 311; State v. Scholl, 130 Mo. 396; State v. Owsley, 102 Mo. 678; State v. Priestley, 74 Mo. 24; State v. Perkins, 11 Mo. App. 82.   (2)   There being no evidence of force used on the part of defendant, the plaintiff is driven to the position that the prosecutrix was a woman of such weak and disordered mind that she could not understand the nature and consequence of such act.   The evidence does not uphold this contention. Her father testifies positively that she did know "such things" were wrong, also her mother testifies that she knew such acts to be wrong, because she had instructed her in regard to them, and Nettie Carter herself testifies she knew such acts to be wrong. The evidence further shows that this defendant never, until on the day of the alleged crime, saw Nettie Carter, and did not know the condition of her mind.   If the man does not know the woman is insane, and from her conduct is led to believe he has her consent, the act is not rape.   State v. Cunningham, 100 Mo. 382.   Again, the defendant contends that since the plaintiff offered Nettie Carter as a witness, and the court, in the absence of the jury, examined her as to her competency as a witness, and declared her competent, thus virtually finding that she was capable of giving her consent, and after this the plaintiff offered her as a witness, by so doing they vouched for her competency and sanity, and can not afterwards be heard to

say she is incapable of giving her consent.      State v. Thompson, 26 S. W. 987.

·*Edward C. Crow,* Attorney-General, for the State.

(1)   Instructions numbered one and two, asked by the defendant, were properly refused.    These two instructions should only be given upon the theory there is no evidence to warrant a conviction and submit the case to the jury.    The rule is that where a verdict has been rendered and motion for a new trial has been made or to have it set aside because of lack of substantial evidence to support it, and the motion ·has been overruled by the trial court, it must be a clear case of failure of proof before this court will interfere.    State v. Hayden, 141 Mo. 311.    Where there is evidence to support the verdict, it is the duty of the court to submit the question of fact to the jury, and it will not be disturbed unless there is evidence of passion, prejudice and partiality on the part of the jury in finding a verdict.    State v. Cook, 58 Mo. 58; State v. Hildebrand, 116 Mo. 543; State v. Thomas, 78 Mo. 327; State v. Jackson, 95 Mo. 623.    (2)   The record in this case fully justifies the verdict of the jury upon the theory that the defendant attempted forcibly to ravish the girl against her consent.    The testimony of the defendant himself admits all of the facts in the case except the proposition that he attempted to forcibly have intercourse with her against her consent and at all hazards.    There was evidence of the outcry and resistance of the prosecuting witness.    The testimony clearly shows that the girl made all the resistance of which she was capable.    It is true that some of the courts have said that resistance must be up to the point to be overpowered by actual force and inability from loss of strength to longer resist, and other courts have said that a woman's will must be opposed to the act and

there must be no inclination favoring it, or that will be considered in favor of the defendant. This latter is not, under ordinary facts, repugnant to good doctrine, but a better judicial doctrine appears to be, the case is proven if the woman only did not consent. Any other doctrine is asking too much of virtue and giving too much to vice. Bishop on Criminal Law (8 Ed.), sec. 1122, par. 5. The measure of resistance must be determined by the condition of the woman and the facts surrounding the case. The facts in this case are amply sufficient under the decisions in this State to authorize a conviction for assault with intent to commit rape. State v. Cunningham, 100 Mo. 382. (3) To constitute a rape the act must be intended to be done with force and without the woman's consent, and if done with these intentional elements, it can make no difference that the woman was insane, and that the accused did not know she was incapable of giving her consent. State v. Cunningham, 100 Mo. 394. The question as to whether or not the defendant knew that the prosecuting witness in this case was mentally incapable of consenting, was submitted to the jury by proper instructions on the theory of the defense that the prosecuting witness assented to whatever was done. When that instruction was given it met the proposition of law that if the man does not know that the woman is non compos and from her conduct is led to believe he has her consent, then no rape or an assault to commit rape can exist. The law is that if the defendant intended at the time of making the assault, with force, if necessary, to the extent of having carnal knowledge of the woman to carry out the intent, notwithstanding any resistance on her part, then even if he is frightened away or was successfully resisted, or subsequently abandoned his purpose without accomplishing it, this would be no defense. If the defendant made the assault with the intention and the means adapted to the end with the apparent ability to com-

plete the attempt in the usual course of natural events, if not hindered by causes outside of his own will, the case may be said to be fairly made out.    63 Mo. 296; 78 Mo. 307.

BURGESS, J.—Defendant was convicted in the circuit court of Monroe county for assault with intent to ravish one Nettie Carter, and his punishment fixed at three years' imprisonment in the penitentiary.    After unavailing motions for a new trial and in arrest defendant appeals.

It appears from the record that between two and three o'clock of the afternoon of October 8, 1900, at Monroe county, while Nettie Carter, a feeble-minded female, then about twenty-two years of age, was going from her father's house in said county along the public road leading therefrom to a neighbor's, on an errand, defendant who was traveling along the road in a one-horse buggy in the same direction, overtook her and asked her to get in the buggy and ride with him, which she did.    Immediately after she got in the buggy and they had started the horse, defendant began taking liberties with her with her consent, such as hugging and kissing her and feeling her breast, and then soliciting her to permit him to have sexual intercourse with her, which she refused.

After having gone a few hundred yards defendant gave her a dollar, stopped the buggy, and asked her if he should hitch the horse to the fence, and they get out, but she declined. He then asked her about the dollar, and she gave it back to him.    He then got down upon his knees in front of the girl with his back to the dashboard and his hands under her clothing, when her mother, who was cutting sprouts in a pasture hard by, being attracted by the motions of one of her arms, and thinking that whoever it was, was sick, advanced towards the buggy, and heard a female voice crying, and several times heard her daughter say, "Let me out of the buggy."

She finally reached the buggy, and when she did, found her daughter and defendant in the position indicated. Whereupon, she made defendant release his hold upon her daughter, hit him two or three times in the face with the buggy whip, when the girl got out of the buggy, and defendant went on west.

Defendant did not deny his purpose and desire to have connection with the girl, but asserted he did not desire to do so without her consent, and that he had no knowledge whatever of the feeble condition of her mind.

She testified as a witness in the case and stated that she did not object to the privileges that defendant took with her, and that she knew that it was wrong to permit him to do so.

At the close of the evidence upon the part of the State, defendant interposed a demurrer to the evidence which was refused, and in this it is insisted error was committed.

It is well settled by this court that it will not undertake to pass upon the weight of the evidence in a criminal case, and unless there was no substantial evidence to justify the verdict or it was the result of passion, prejudice or partiality on the part of the jurors, it will not interfere. [State v. Nelson, 98 Mo. 414, and authorities cited.]

The evidence in the case at bar showed that the prosecuting witness, Nettie Carter, was of feeble mind, and while it also showed that she knew that it was wrong to allow the defendant to take the privileges with her which it appeared from the evidence he did, and from which, in the absence of countervailing evidence, it might be inferred that she assented to the importunities of defendant, yet according to his own evidence, after he gave her the dollar, he stopped the buggy and asked her to get out upon the ground, that she refused to do so, and gave him back the dollar. He then undertook to have connection with her in the buggy under the circumstances before

State v. Huff.

stated, and while doing so, the mother of the girl testified that she heard her crying, and repeatedly ask to be let out of the buggy. These facts showed that she was not consenting, and whether the facts in evidence showed beyond a reasonable doubt that defendant intended to accomplish his purpose regardless of any resistance that Nettie Carter might offer, was, we think, properly submitted to the jury.

It must necessarily follow that there is nothing disclosed by the record which justifies the assertion that the verdict was the result of prejudice, passion or partiality.

It is claimed by defendant that the first and second instructions asked by him should have been given, there being no evidence upon which a verdict could be sustained, but it must logically follow from what has been said that there is no merit in such contention.

It is further insisted that the court erred in refusing the fifth instruction asked by defendant, to the effect that if Nettie Carter's mind was too weak to give her consent to carnal intercourse with defendant, yet unless he had notice of such mental unsoundness to that extent, if any, such unsoundness of mind should not be considered by the jury. But in view of the fact that she had sufficient intelligence to know that it was wrong to allow defendant to take privileges with her of an immoral tendency, and if she had, she also had sufficient intelligence to consent to criminal connection with defendant, no error was committed in refusing this instruction, because the only question for the jury under the evidence was, whether she did in fact directly or impliedly consent thereto, so that it was of no consequence whether defendant had notice of the feeble condition of her mind at the time of the commission of the offense or not.

The action of the court in refusing the eighth instruction asked by defendant is assigned for error, but the answer to this

contention is, that it was wholly immaterial and properly re-
fused.   Nor is there any merit in the assertion that error was
committed in giving the third and sixth instructions in behalf
of the State.   The instructions that were given covered every
phase of the case, and were very fair to the defendant.

Finding no reversible error in the record we affirm the
judgment.   *Sherwood, P. J.,* and *Gantt, J.,* concur.